HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE COMPHY CO.,

    Plaintiff,

 v.

AMAZON.COM, INC.,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  2:18-cv-01460-RSM

PLAINTIFF'S SECOND AMENDED
MOTION AND MEMORANDUM FOR
ENTRY OF PRELIMINARY INJUNCTION

NOTE ON MOTION CALENDAR:
NOVEMBER 2, 2018

ORAL ARGUMENT REQUESTED

Plaintiff The Comphy Co. ("Comphy" or "Plaintiff") submits this Second Amended Memorandum in support of its Motion for Entry of Preliminary Injunction (the "Motion") against Defendant Amazon.com, Inc. ("Amazon" or "Defendant").[1]

## INTRODUCTION

Prior to transfer to this district, Plaintiff Comphy had moved for a preliminary injunction in the Northern District of Illinois.  While the case was pending in the Northern District of Illinois, Amazon sought to delay consideration of the motion to conduct some discovery.  The parties agreed on the scope of document exchange and that Amazon would

---

[1] Plaintiff's Second Amended Motion and Memorandum for Entry of Preliminary Injunction and supporting Declaration of Haylee J. Hurst, and Proposed Order are the same as those filed under Docket Nos. 71, 71-1, 71-2, and 71-3, except for a change in the noting date to November 2, 2018.

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 1 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

take five depositions, as reflected in a status report.   [0060].  Amazon's requested depositions have now been completed sequentially in Bellingham, WA, Chicago, IL, Sacramento, CA, and Bend, OR, and there is no remaining barrier to decision.   Plaintiff Comphy is entering its most important season for retail sales and will suffer irreparable harm if the Court does not grant it preliminary relief to protect its good will and avoid more actual confusion among consumers.

Amazon uses Comphy's trademarks to initially and actually confuse and draw shoppers seeking Comphy brand products to the amazon.com website.  Amazon infringes Comphy's trademarks in multiple ways that have caused actual customer confusion. Amazon responds to searches for "comphy" on Amazon's own website or on search engines such as Google, Bing, or Yahoo by showing potential Comphy customers inferior sheets having no affiliation with the Comphy brand products, including inferior "Comfy" brand sheets that independently infringe Comphy's Trademarks and others that have ambiguous branding. [1-8]. Amazon pays for search results on Google and Bing to draw people who search for Comphy brand products to the amazon.com website instead of the Comphy's website at comphy.com.  [1-12].

Amazon's web site also provides "results for 'comphy sheets,'" when a user types the first few letters of COMPHY trademarks [1-8].  Specifically, Amazon provides a search completion suggestion for "Comphy Sheets" when a user types the letters "Comph" [1-7]. Amazon provides a search suggestion for "Comphy Company Sheets" when a user types the letters "Comphy Com."  [1-9].  Amazon then sells cheap, inferior sheets at a fraction of Comphy's prices as "Amazon's choice for 'Comphy Sheets'" after drawing customers to its website.  [1-11].

**PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 2 of 25
Case No. 2:18-cv-01460-RSM**

**BROWNLIE WOLF & LEE, LLP**
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

By these actions, Amazon uses the Comphy brand, Comphy's Trademarks and the Comphy Company name as a virtual sign to steal customers from Comphy. See Affidavit of Mia Richardson (the "Richardson Affidavit [34, 50]") at ¶¶ 24, 28, 30. Amazon's actions are dampening the growth of Comphy's retail sales at a critical time in Comphy's retail growth plan. *Id*. at ¶ 29. Amazon is causing irreparable damage to Comphy's brand and reputation for high quality and luxury. *Id*. at ¶¶ 29, 30, 32. Amazon takes advantage of Comphy's Trademarks, company name and goodwill to falsely claim that Comphy products are available for sale on amazon.com. *Id*. at ¶¶ 24, 28, 30. Actual confusion is alienating Comphy customers that purchase inferior products on amazon.com believing that they are ordering authentic Comphy brand products. *Id*. at ¶ 30; the Declaration of Kelly-Ann Jeffcoat (the "Jeffcoat Declaration [40]") at ¶¶ 1-8, the Declaration of Michael Shinn (the "Shinn Declaration [42]") at ¶¶ 1-5, and the Affidavit of Haylee Hurst (the "Hurst Affidavit [41]") at ¶¶ 1-23. The holiday shopping season extending through December is particularly important to Comphy's overall sales. Richardson Affidavit [34, 50] at ¶ 32. See also Declaration of John King (the "King Declaration [37, 38]") at ¶ 5. If Amazon continues to misuse Comphy's Trademarks during the 2018 holiday shopping season, Comphy will suffer irreparable damage. Richardson Affidavit [34, 50] at ¶ 31.

Unlike Amazon's conduct that was excused in the Multi Time Machine case, *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 937 (9th Cir. 2015), Amazon fails to include clear labelling to distinguish the products it is selling from genuine Comphy brand products and actively uses the COMPHY trademark and Comphy Company when suggesting searches and displaying results. As recently testified in his deposition, a very experienced

Amazon user[2] seeking COMPHY SHEETS on amazon.com bought COMFY SHEETS and the confusion was only resolved when he opened and touched the sheets to immediately realize that the sheets were not genuine Comphy brand sheets[3].   Amazon's conduct also includes additional labelling using Comphy trademarks such as

 Amazon's Choice for "comphy sheets" in the search results page.   [1-11] at page 2.  Amazon also pays for ads on third party search engines, such as google, that falsely represent to potential customers that genuine Comphy brand products are available at Amazon when such a customer searches for "Comphy Sheets".  [1-12] at page 2.

## ARGUMENT

Defendant's wrongful use of the COMPHY Trademarks in the advertisement, promotion, offers to sell, and sale of third party products is causing and will continue to cause irreparable harm to Comphy's reputation and the goodwill acquired by Comphy's use of the COMPHY Trademarks.   Without the relief requested by Comphy's instant Motion, Defendant's unlawful activities will continue unabated, and Comphy and consumers will suffer enormous irreparable harm.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

---

[2] "We buy almost everything that's not food related" on Amazon.  Declaration of Haylee Hurst at Exhibit A, p. 2 (the "Hurst Declaration").
[3] "when I felt the sheets, I could tell they didn't feel the same, and then upon looking at the packaging, I noticed it didn't have Comphy with a pH on it."  Hurst Declaration at Exhibit A, pg. 4.

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 4 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

I.      **This Court May Exercise Personal Jurisdiction Over Defendant.**

This Court may properly exercise personal jurisdiction over Defendant since Defendant sought transfer to this district and has its headquarters in this district.

II.     **Standard for Preliminary Injunction in a Trademark Infringement Action.**

A party seeking to obtain a preliminary injunction must demonstrate that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1247 (9th Cir. 2013). "To establish a trademark infringement claim under section 32 of the Lanham Act or an unfair competition claim under section 43(a) of the Lanham Act, [a plaintiff] must establish that [the defendant] is using a mark confusingly similar to a valid, protectable trademark of [the plaintiff]." *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

III.    **Comphy Has a Strong Likelihood of Success on the Merits.**

A.      **Comphy Will Likely Succeed on Its Trademark Infringement Claim.**

Comphy can establish ownership of trademarks via registration and use in commerce. *Brookfield*, 174 F.3d at 1047.  A first user in commerce of a mark is entitled to ownership of that mark. *Id.*

i.      **The COMPHY Trademarks Are Distinctive.**

Comphy owns U.S. Trademark Registration No. 3,479,190 for a stylized THE COMPHY CO. and design.  [1-5].  The registration for U.S. Trademark Registration No. 3,479,190 is valid, subsisting, in full force and effect, and is owned by Comphy.  The '190

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 5 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

Registration is incontestable pursuant to 15 U.S.C. § 1065, which means it is conclusive evidence of the validity of  this trademark and of the registration of the trademark, of Comphy's ownership of the trademark, and of Comphy's exclusive right to use the trademark in commerce.

Comphy has also developed widespread goodwill, recognition and secondary meaning for its stylized "C" trademark, the COMPHY word mark, the COMPHY COMPANY name, and for the COMPHY SHEETS mark.  Richardson Affidavit [34, 50] at ¶¶ 2 and 7-18; [1-1]; [1-2]. For instance, luxury hotels and spas feature Comphy brand products, including the Ritz-Carlton, the Four Seasons, the St. Regis and the Canyon Ranch.  Richardson Affidavit [34, 50] at ¶¶ 7.  Indeed, Comphy is the brand standard for Ritz-Carlton spas worldwide, the Westin, Shangri-La, Four Seasons, JW Marriott, Miraval, and the St. Regis.  Richardson Affidavit [34, 50] at ¶¶ 9 and 12.  The Comphy brand has extended from hotels and spas to bed and breakfasts.  Richardson Affidavit [34, 50] at ¶¶ 14-16.  The Comphy brand was also extended into retail sales as the result of customer demand.  Richardson Affidavit [34, 50] at ¶¶ 17-18. Since the Comphy Company set up its e-commerce website in 2013, web retail sales have become the Comphy Company's highest growth area by a significant margin.  Richardson Affidavit [34, 50] at ¶18.

Comphy has expended extensive sums annually since 2003 on advertising to promote its Comphy brand and branded products, via trade shows and other advertising and marketing in industry publications targeting bed and breakfasts.  Richardson Affidavit [34, 50] at ¶¶ 17 and 20-21.  Comphy markets its products through social media accounts, a Facebook page, a Pinterest Account, and Instagram account and a You Tube channel, each of which prominently

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 6 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

display the Comphy brand name and logo.  Richardson Affidavit [34, 50] at ¶ 22.  The result of the promotion has created widespread goodwill, evidenced by recognition in the media and growing sales that first reached seven figures in 2006 and approached eight figures by 2017. Richardson Affidavit [34, 50] at ¶¶ 10-11, 16 and 23.   On its website, Comphy also prominently features its family of Comphy products and marks, including, for example, Comphy Bed and Bath, Comphy Baby, Comphy for Home, Comphy for Professionals, and Comphy Touch in connection with products including linens and bedding, towels, bed pads, mattress pads and table pads, sheets, duvets, comforters, pillow cases, pillow shams, table skirts and robes.  Richardson Affidavit [34, 50] at ¶ 31; [1-2].

Comphy has also taken steps to stop unauthorized use of its marks.  In 2016, Comphy reported the infringing Amazon advertisements to Google, and the advertisements would be removed only to re-appear later.  Richardson Affidavit [34, 50] at ¶ 24.  In 2018, Comphy noticed an increasing threat to its Comphy brand and took additional actions to protect its trademarks.  Richardson Affidavit [34, 50] at ¶ 27.  Comphy filed for federal registration of its COMPHY mark and has successfully opposed trademark applications including for "Comfy Basics" and "Comfy Bedding," which Comphy believes are associated with the "Comfy" sheets being offered on amazon.com.   Richardson Affidavit [34, 50] at ¶ 27.

## ii.  Amazon Is Not Authorized to Use the COMPHY Trademarks.

Comphy has never given Amazon permission to use any of the COMPHY Trademarks, including the COMPHY SHEETS trademark or the COMPHY or COMPHY COMPANY name for any purpose, including in advertisements or as a "sign" in searches to lure customers to any products.  Richardson Affidavit [34, 50] at ¶ 24.  In fact, the opposite is true, in that

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 7 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

Comphy brand products are purposely not sold on amazon.com despite numerous solicitations by Amazon because the amazon.com model is not consistent with the Comphy brand image. Richardson Affidavit [34, 50] at ¶¶ 25-26.   None of the sheets sold on amazon.com via Amazon's use of the COMPHY trademark, the COMPHY SHEETS trademark or the COMPHY CO. or COMPHY COMPANY name have any affiliation with Comphy, nor has Comphy authorized use of its trademark in connection with these products.   Richardson Affidavit [34, 50] at ¶¶ 25-26; [1-6]; [1-8]; [1-10].

### iii. **Defendant's Use of the COMPHY Trademarks and the Phonetically Equivalents "Comfy Sheets" Causes a Likelihood of Confusion as to the Origin or Sponsorship of the Products Marketed and Sold by Defendant.**

The Ninth Circuit has enumerated non-exhaustive factors to determine whether there is a likelihood of confusion, known as the *Sleekcraft factors*, which include: [1] strength of the mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, (9th Cir. 1979).  In *Brookfield*, the Ninth Circuit established the doctrine of initial interest confusion and identified the factors that were most important in the context of internet commerce: (1) the similarity of the marks; (2) the relatedness of the goods and services offered; and (3) the simultaneous use of the Internet as a marketing channel.  *Brookfield*, 174 F.3d at 1054 n. 16.

The Ninth Circuit has held that initial interest confusion can only be eliminated when the displayed results "clearly" and "unambiguously" identifies brands unrelated to the search

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 8 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

that caused initial interest confusion.  *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 938 (9th Cir. 2015).   However, Amazon's present actions both create initial interest confusion and fail to "eliminate" the initial confusion consistent with *Multi Time Mach., Inc.*, because Amazon uses the COMPHY trademarks and company name to display directly infringing "Comphy Sheets" ([1-8] "Comfy Sheets Luxury") and other sheets that lack "clear" and "unambiguous" branding to "eliminate" initial confusion ([1-11] "Hotel Luxury Bed Sheets Set").  Amazon's use of Comphy's marks and "Comfy Sheets" to direct customers to Amazon's site where no Comphy brand products are sold allows Amazon to derive an improper benefit from the goodwill Comphy developed in its marks. See, *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1146 (9th Cir. 2011)(discussing Brookfield's holding that "by using Brookfield's mark MovieBuff to direct persons searching for Brookfield's product to the West Coast site, West Coast derived an improper benefit from the goodwill Brookfield developed in its mark.").

### 1.  **Comphy's Strong Trademarks Are Famous and Associated with High Quality Genuine Comphy Products.**

Due to their long-standing use (Richardson Affidavit [34, 50] at ¶¶ 2, 5, 6) and wide acceptance by the public, the COMPHY Trademarks have become famous and associated with high quality genuine Comphy Products.  Richardson Affidavit [34, 50] at ¶¶ 11-13, 16, 19, 23. The COMPHY Trademarks are distinctive when applied to genuine Comphy Products, including Comphy Sheets.  The marks signify to consumers that the products come from Comphy and are manufactured to the highest quality standards.  Consumers have come to recognize Comphy's brand as a source of luxury microfiber linens, sheets, and related products

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 9 of 25
Case No. 2:18-cv-01460-RSM

**BROWNLIE WOLF & LEE, LLP**
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

for spa, hospitality, and home.  Thus, the fifth factor, the strength of the marks, also weighs heavily in favor of Comphy.

### 2.  Amazon Is Using Marks Identical and Similar to Comphy's Trademarks to Sell Directly Competing and Identical Products as Comphy.

Amazon is using "Comphy," "Comfy Sheets," and "Comphy Company" to sell third party sheets.  [1] at ¶¶ 20-24.  "Comphy" and "Comphy Company" are identical to Comphy's trademarks.   Amazon's use of the phonetically equivalent "Comfy Sheets" has actually confused consumers, as evidenced by the Jeffcoat Declaration [40], the Exhibits contained in the Hurst Affidavit [41], and the Shinn Declaration [42].   Such "[a]ural and semantic similarities increase the likelihood of consumer confusion."  *Pom Wonderful Ltd. Liab. Co. v. Hubbard*, 775 F.3d 1118, 1129 n.9 (9th Cir. 2014).   Amazon is using both the identically spelled "Comphy Sheets" and the aurally identical "Comfy Sheets" to sell the exact same products sold by Comphy.  Richardson Affidavit [34, 50] at ¶ 2.  These confusion factors weigh in favor of Comphy.

### 3.  Substantial Evidence of Actual Confusion Is Entitled to Substantial Weight in a Likelihood of Confusion Analysis.

"Actual confusion is at the heart of the likelihood of confusion analysis." *Playboy Enters. v. Netscape Communs. Corp.*, 354 F.3d 1020, 1027 (9th Cir. 2004).   Standing alone, evidence of actual confusion strongly weighs the analysis in favor of finding a likelihood of confusion.   *Id.*   This is because evidence of actual confusion is almost impossible to secure, because confusion often goes unreported or unrecorded and because persons who are truly confused will often never be aware of the deception. See, McCarthy on Trademarks § 23:12).

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 10 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

In 2017, Comphy began to receive phone calls and e-mails from people informing Comphy that they had purchased sheets on amazon.com intending to purchase Comphy sheets. Jeffcoat Declaration [40] at ¶ 2.  Comphy also received inquiries from people asking whether sheets they found on amazon.com were Comphy sheets.  *Id*.  Finally, customers have contacted Comphy to ask when they would receive their "free pillowcases" as promised by a seller on amazon.com.  *Id*.  Written correspondence that Comphy has received from customers relating to issues with amazon.com are attached to the Declaration of Kelly-Ann Jeffcoat at Exhibit A. As can be seen from the e-mails in Exhibit A to the Declaration of Kelly-Ann Jeffcoat, the typical complaint from these confused consumers was that the purchased sheets were not of the same quality as the purchaser had expected.  Jeffcoat Declaration [40] at ¶ 2.  For instance, on July 21, 2018, Comphy received an e-mail from a customer asking about the following issue:

> I ordered your sheets . . . after laying on them in a spa.  And they were amazing. So I decided to order them for my sons [sic] bed and they are nowhere near as soft and silky. I ordered them off of amazon. We're [sic] they a different comfy sheet company? Or do the colors feel different?

*Id*. at ¶ 3.  After Comphy replied that Comphy sheets are not sold on amazon.com, she responded:

> I realized after the fact that the company is comfy and not Comphy. Your sheets rock, theirs suck! I just ordered another pair from you.

*Id*.  As another example, on August 15, 2018, Comphy received another e-mail inquiry from a customer asking why he should purchase sheets directly from Comphy when they are offered at a lower price and with free shipping on amazon.com.  Jeffcoat Declaration [40] at Exhibit C.

In addition to these e-mails, starting in early 2018, Comphy began receiving an average of approximately three to four calls a week from people complaining about the "Comphy"

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 11 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

sheets that they had purchased on amazon.com.  *Id*. at ¶ 5.  For example, on July 9, 2018, Comphy received phone calls from two separate customers who purchased sheets on amazon.com thinking they were Comphy sheets.  *Id*. at ¶ 6.  One of the customers informed Comphy that she had searched for "comphy" on Google and amazon.com was the top search result.  *Id*.  She then purchased sheets on amazon.com thinking they were Comphy sheets.  *Id*.  The consumer did not realize until she talked to a representative from Comphy that the sheets she purchased on amazon.com were not Comphy sheets.  *Id*.  Another customer also searched for "comphy" on a search engine after sleeping on Comphy sheets at a bed and breakfast.  *Id*. at ¶ 7.  He purchased sheets from amazon.com after it was listed as the top search result for "comphy" sheets.  *Id*.  He informed Comphy that he could tell right away when he received the sheets that they were not Comphy brand and that he returned them to amazon.com.  *Id*.

As a further example, on July 11, 2018, Comphy received a note card from an individual thanking Comphy for the offer of free pillowcases.  *Id*. at ¶ 8.  Although Comphy has never offered free pillowcases, a customer by the same name had recently purchased pillowcases through Comphy's website.  *Id*.

Additionally, as evidenced by Exhibit A to the Affidavit of Haylee Hurst, numerous amazon.com users have posted negative reviews or comments indicating that they purchased products on amazon.com that they later learned were not genuine Comphy products or complaining of the quality of the infringing products.  Hurst Affidavit [41] at ¶ 2.  More concerning is the fact that it is clear from the comments that some purchasers do not realize that they did not purchase Comphy sheets, even after the competing product has been received.  *Id*. at ¶ 10.

**PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 12 of 25
Case No. 2:18-cv-01460-RSM**

**BROWNLIE WOLF & LEE, LLP**
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

Comphy has also submitted the Declaration of Michael Shinn.  Mr. Shinn went to Wine & Roses Spa in Lodi, California on July 7, 2018, and thought that the spa "had the most amazing sheets."  Shinn Declaration [42] at ¶ 2.  He asked at the spa where the sheets came from, and was told they were "Comphy with a 'ph'," and Mr. Shinn wanted to order the sheets.  *Id*.  Mr. Shinn then went on amazon.com and typed "Comphy" into the search bar on Amazon's website with the specific spelling given to him by the spa staff.  *Id*. at ¶ 3.  He ordered the first sheets that were listed in the results in his search using the word "Comphy", believing that the top listing was what he was looking for.  *Id*.  It was not clear to Mr. Shinn from the search results that none of the products listed were actually "Comphy" brand.  *Id*. When his order arrived, he noticed that the sheets were not the same quality as the ones the spa used, and were not what he expected, and then first noticed package was labeled "Comfy" with an "f".  *Id*. at ¶ 4.  Even as an experienced Amazon shopper, Mr. Shinn found Amazon's search results to be very confusing and misleading in this circumstance.  *Id*. at ¶ 5.  There was no clear and unambiguous indication to Mr. Shinn that he was not ordering genuine Comphy Sheets.

### 4.  Amazon Targets the Same Marketing Channels in the Same Manner as Comphy.

In terms of retail sales, Comphy advertises and sells its products directly to consumers via its website at comphy.com.  Richardson Affidavit [34, 50] at ¶ 18.  Since Comphy set up its e-commerce website in 2013, web retail sales have become Comphy's highest growth area by a significant margin.  *Id*.  For the most part, visitors to Comphy's website are there because they have heard of or experienced the product themselves and are looking specifically for the Comphy brand.  *Id*.  Google is the largest driver of traffic to Comphy's website.  King

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 13 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

Declaration [37, 38] at ¶ 9.  Historically, the most popular known query driving traffic to www.comphy.com from Google is the search term "comphy sheets," followed by "comfy sheets," "comphy company" and "comphy."  *Id*.  Amazon uses pay-per-click advertisements for Comphy sheets to draw customers searching for Comphy to its own website.  Richardson Affidavit [34, 50] at ¶¶ 24, 28.  Thus, because Defendant targets the same Internet consumers by the same marketing channel as Comphy, this factor also weighs in favor of Comphy.

> **5.**   **Internet Consumers Purchasing Genuine Comphy Products Use the Same Care as Ordinary Internet Users and are Very Likely to be Confused.**

Internet consumers purchasing genuine Comphy Products are not a certain, specialized, sophisticated group of people.  "Navigating amongst web sites involves practically no effort whatsoever, and arguments that Web users exercise a great deal of care before clicking on hyperlinks are unconvincing."  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000).  As such, Comphy consumers are very likely to be confused, so this factor favors Comphy.   Indeed, the evidence clearly establishes that Comphy consumers are actually confused by Defendant's use of the Comphy Trademarks.

> **6.**   **Amazon Is Intentionally Using the Comphy Trademarks to Confuse and Deceive the Consuming Public into Thinking that Third-Party Products Are Manufactured by or Emanate from Comphy.**

Amazon is intentionally using the Comphy Trademarks to confuse and deceive the consuming public into thinking that third-party products are manufactured by or emanate from Comphy.  Amazon is purposefully attempting to benefit and trade off of Comphy's reputation and associated goodwill.  This is evidenced by Amazon's solicitations to Comphy:  Comphy

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 14 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

received e-mail inquiries from Amazon addressed to "Comfy Bedding" on January 4, January 16, January 29, and March 12, 2018, inviting the Comphy Company to sell products on amazon.com.   Richardson Affidavit [34, 50] at ¶ 25.   Most recently, an amazon.com representative e-mailed the Comphy Company on June 25, 2018, and asked to set up a meeting to discuss opportunities for marketing Comphy brand products on amazon.com during a trade show that the Comphy Company was attending.  *Id.*  Amazon's intent also weighs heavily in Comphy's favor.

In sum, it is manifestly clear that the likelihood of confusion factors weigh heavily in favor of Comphy, and therefore, Comphy has proved that it has a reasonable likelihood of success on the merits for its trademark infringement claim.

**B.  Comphy Is Likely to Succeed on its False Designation of Origin Claim.**

The Lanham Act proscribes, in connection with goods, any false designation of origin "which is likely to cause confusion, or to cause mistake, or to deceive . . . as to [their] origin." 15 U.S.C. § 1125(a)(1). According to the Ninth Circuit, the Lanham Act "has progressed far beyond the old concept of fraudulent passing off, to encompass any form of competition or selling which contravenes society's current concepts of fairness." *Smith v. Montoro*, 648 F.2d 602, 604 (9th Cir. 1981).  Unfairness is demonstrated above and in the exhibits to Comphy's complaint, which show that Amazon extensively and intentionally leverages the Comphy trademarks and Comphy Company name to drive consumers to its own website where no genuine Comphy brand products are available.  It is patently unfair for Amazon to use its market power, its hold on its prime members, and its shipping advantages to steal away

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 15 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

customers seeking genuine Comphy Sheets after having experienced the Comphy Sheets at a high-end spa or hotel.

**C.** **Comphy Is Likely to Succeed on its Contributory Trademark Infringement Claim.**

"Just as liability for copyright infringement can extend beyond those who actually manufacture or sell infringing materials, our law recognizes liability for conduct that assists others in direct trademark infringement." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).   Contributory liability applies to a party that "continues to supply a product" of another party knowing that the other party is engaging in trademark infringement." *Id.*   Amazon's use of Comphy's registered and common law trademarks, and similar marks, as search suggestions and search terms draws in customers searching for Comphy brand sheets. [1-7], [1-8], [1-9], [1-12], [1-13]; Richardson Affidavit [34, 50] at ¶¶ 24, 28, 30, 32.   In this, Defendant intentionally directs retail customers to third party goods on amazon.com using Comphy's Trademarks as a sign post.   [1-10], [1-11]; Richardson Affidavit [34, 50] at ¶ 30. Amazon then offers and supplies products, including "Comfy Sheet", with actual and constructive knowledge that such products directly infringe Comphy's Trademarks.   What's more, Amazon actively advertises and directs consumers to infringing products in paid advertisements on third party search engines and by designated Comfy Sheet products as "Amazon's Choice." [1-11].   Amazon has, through its actions, supplied infringing products of third parties where it knows or reasonably should know that infringement is occurring, and is supplying the necessary marketplace for the sale of products that infringe Comphy's Trademarks.   Amazon either knew, or reasonably should know, that infringement is occurring,

**PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION**
**Page 16 of 25**
**Case No. 2:18-cv-01460-RSM**

**BROWNLIE WOLF & LEE, LLP**
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

as it sent many e-mail inquiries to Comphy, inviting Comphy to sell products on amazon.com, including on June 25, 2018, where an amazon.com representative asked Comphy to set up a meeting to discuss opportunities for marketing Comphy brand products on amazon.com. Richardson Affidavit [34, 50] at ¶ 25.

## IV.    Comphy Is Likely to Suffer Imminent Irreparable Harm in the Absence of Preliminary Relief.

"Evidence of loss of control over business reputation and damage to goodwill" can establish irreparable harm when grounded in evidence. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013).  Defendant's unauthorized use of the COMPHY Trademarks has and continues to irreparably harm Comphy through diminished goodwill and brand confidence, damage to Comphy's reputation, loss of exclusivity, and loss of future market share.   The occurrence and extent of these harms is not merely speculative, but actual as shown by the multitude of actually confused, unhappy and dissatisfied customers who mistakenly purchased competing products on amazon.com, discussed above with respect to actual confusion and further below.  The negative product reviews on amazon's web site from users that sought to buy genuine Comphy Sheets speaks to the reputational damage being caused by Amazon.

A significant number of Comphy brand customers are buying sheets on amazon.com, believing they are authentic Comphy brand sheets, and this is likely an overriding factor in the shortfall with the projected growth.  *Id.* at ¶ 30.  This likelihood is highlighted by a recent inquiry to Comphy from an existing customer:

> If I can buy the sheets on Amazon for $3 less with free shipping, why should I pay more and pay shipping going direct through you? I've bought from you in

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 17 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

the past, but I'm wondering should I be going to Amazon or are they different sheets?

Jeffcoat Declaration [40] at ¶ 4.  When advised that Comphy sheets were not available on amazon.com, the customer replied:  "Something seemed off about the sheets on Amazon, they didn't look like your products, but I felt the need to check anyway."  *Id*.

Amazon is using pay-per-click advertisements for Comphy brand sheets to draw customers searching for Comphy brand product to its own website, even though amazon.com does not sell any authentic Comphy brand sheets.  *Id*.  In addition to lost revenue, this is damaging the Comphy brand because the sheets offered for sale on amazon.com are inferior quality compared to Comphy brand sheets.  *Id*.  In particular, "Comfy" brand sheets on amazon.com have many poor reviews, including reviews by customers warning others that they are not Comphy brand sheets.  *Id*.  The Comphy Company has responded to many customer service inquiries from dissatisfied "customers" who believe they purchased authentic Comphy brand sheets on amazon.com.  *Id*.  The Comphy Company will not meet its 2018 budget if this situation is not remedied immediately.  *Id*.

Further, as shown by the examples in Declaration of Kelly-Ann Jeffcoat [40], the exhibits to the Affidavit of Haylee Hurst [41], and the Declaration of Michael Shinn [42], many confused consumers are dissatisfied with the competing products, while still believing them to be Comphy products.  They are actually mistakenly attributing to Comphy the defects or negative impressions of the third party products sold on amazon.com, placing Comphy's reputation at risk and causing irreparable harm.  Amazon's attempts to "piggy back" off of Comphy's reputation and goodwill means Comphy loses control over its trademarks, reputation, and goodwill.

**PLAINTIFF'S SECOND AMENDED MOTION AND MEMORANDUM FOR ENTRY OF PRELIMINARY INJUNCTION Page 18 of 25 Case No. 2:18-cv-01460-RSM**

**BROWNLIE WOLF & LEE, LLP** 230 E. Champion Street Bellingham, WA 98225 Ph. (360) 676-0306/Fax: (360) 676-8058

This is at a critical period for the goodwill of the Comphy program and its growth of the direct internet retail market for Comphy brand goods, including Comphy Sheets. Specifically, the Comphy Company's 2018 budget is based upon a projected growth of 34 percent in the web retail market.  Richardson Affidavit [34, 50] at ¶ 29.  The Comphy Company's web retail sales in 2018 have fallen short of this projection, at only 24.2 percent growth as of May 31, 2018.  Richardson Affidavit [34, 50] at ¶ 29.  Comphy's actual 2018 sales, compared to actual sales during the same time period in 2017 is shown in paragraph 29 of the Richardson Affidavit [34, 50].  More troubling, the Comphy Company felt that 34 percent was a conservative estimate of growth for several reasons.  *Id*.  First, its web retail sales showed 31 percent growth in 2017.  *Id*.  Second, at the end of 2017, the Comphy Company stopped allowing its primary online retailers to sell Comphy brand products on their own websites (indicated on the chart in paragraph 29 of the Richardson Affidavit [34, 50] as "Other Authorized Web Retailers"), so the only place that authentic Comphy brand products may be purchased by retailers is through the Comphy Company website, or from the hotel/spa, wellness, and bed and breakfast customers who retail Comphy brand products.  *Id*.  The 34 percent growth was based upon the projection that the Comphy Company would capture only half of the sales that were going to its other web retailers in 2017.  *Id*.  However, the Comphy Company has not met even this very conservative projection.  *Id*.

The affidavit of Mia Richardson also shows the amount of time Comphy spends marketing Comphy products at trade shows, as Comphy attends more than 20 trade shows per year.  Richardson Affidavit [34, 50] at ¶ 20.  Comphy also markets its products through social media.  *Id*. at ¶ 22.  Finally, the Richardson Affidavit [34, 50] also demonstrates the amount of

publicity surrounding the Comphy brand as a result of Comphy's marketing efforts, as well as the amount of sales Comphy has achieved.  *Id*. at ¶¶ 9-12, 23.  All of this evidence is probative of irreparable harm.  Amazon's actions damage the goodwill that is being created, and it is "reasonable to conclude that" Comphy "will likely suffer a nonquantifiable injury to the goodwill" it is creating with consumers, and "that an injunction preventing" Amazon "from selling the allegedly infringing" sheets on its website "would forestall further deterioration in" Comphy's "business relationships."  *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs.*, 602 F. App'x 669, 672 (9th Cir. 2015).

## V.     The Balancing of Equities Is in Comphy's Favor.

Amazon is a large company that accounted for 44% of the total U.S. e-commerce sales in 2017.  [1] at ¶ 32.  As of September 2017, Defendant reported 90 million "Amazon Prime" subscribers, and Defendant reported 310 million active users as of the first quarter of 2016.  *Id*. As such, the relief requested by Comphy should not even be noticed by Amazon, but is extremely significant to Comphy on a by-the-company level.  This is demonstrated by the Affidavit of Mia Richardson that Comphy will not meet its 2018 budget if this situation is not rectified.  Richardson Affidavit [34, 50] at ¶¶ 30, 32.  Comphy is heading into the critical holiday sales season, and the threat to its reputation is imminent.

## VI.    Issuance of the Injunction Is in the Public Interest.

An injunction in these circumstances is in the public interest because it will prevent additional consumer confusion.  The consuming public is currently being misled and actual confusion is resulting making consumers believe that Comphy products are available for sale on amazon.com with Comphy's approval and endorsement.  There, consumers only find

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 20 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

inferior products that are badly reviewed.   As evidenced by the Declaration of Kelly-Ann

Jeffcoat [40], the exhibits attached to the Affidavit of Haylee Hurst [41], and the Declaration of

Michael Shinn [42], several members of the public have been actually confused, and purchased

sheets on amazon.com believing they were genuine Comphy sheets.   Avoiding actual

confusion serves the public interest.  *Nat'l Prods. v. Arkon Res., Inc.*, 294 F. Supp. 3d 1042,

1049 (W.D. Wash. 2018) (analyzing the public interest factor of the Washington Consumer

Protection Act while noting the "overlapping nature of proof in both trade name infringement

cases and Consumer Protection Act violations").

In this case, the injury to the public is significant, and the injunctive relief that Comphy

seeks is specifically intended to remedy that injury by dispelling the public confusion created

by Defendant's actions.   The public has the right not to be confused and defrauded as to the

source of the goods and services offered by Defendant, or as to the identity of the owner of

trademarks and service marks used in connection with those goods and services.   Unless

Defendant's unauthorized use of the COMPHY Trademarks and infringing "Comfy Sheets" is

enjoined, the public will continue to be confused and misled by Defendant's conduct.

## VII.   A Preliminary Injunction Immediately Enjoining Defendant's Unauthorized and Unlawful Use of Comphy's Marks Is Appropriate.

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act

authorizes courts to issue injunctive relief "according to the principles of equity and upon such

terms as the court may deem reasonable, to prevent the violation of any right of the registrant

of a mark …."  15 U.S.C. § 1116(a).  Comphy requests an order requiring the Defendant to

immediately cease all use of the COMPHY Trademarks or substantially similar marks to

**PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 21 of 25
Case No. 2:18-cv-01460-RSM**

**BROWNLIE WOLF & LEE, LLP**
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

market, advertise, or promote any goods or services, as well to cease providing suggestions in an amazon.com search or paying other companies to display an advertisement from amazon.com when parties search for COMPHY, COMPHY COMPANY, COMPHY SHEETS, COMPHY BEDDING, COMPHY CO., or any other terms that are identical or confusingly similar to the COMPHY Trademarks, including all variations with "comfy."  Such injunction should prohibit the following actions by Defendant:

1.  Promoting, supporting or allowing third parties' unauthorized use of the COMPHY trademark (or highly similar marks such as COMFY) to promote bedding, sheets, pillows and related products not made by or under the authority of The Comphy Co. (the "Infringing Products");

2.  Distributing, offering for sale, and selling merchandise under the COMPHY COMPANY, COMPHY SHEETS or COMFY SHEETS storefront in connection with the Infringing Products;

3.  Using the prepopulated search term "Comphy Company Sheets", the search term "Comphy" (either alone or with other words), the search term "Comfy" applied to the Infringing Products (either alone or with other words), the search term "Comfy Company Sheets" and the corresponding display of infringing and unlabeled third-party sheets in connection with such searches.   Any search including "Comphy" or "Comfy Sheets/Bedding/Pillows" should only display products with clear and unambiguous labelling to show that the products are not genuine Comphy brand products;

4.  Automatically suggesting searches for "Comphy", "Comphy Sheets", "Comphy Company" and "Comfy Sheets" when users begin to type a first few letters of those marks;

**PLAINTIFF'S SECOND AMENDED MOTION AND MEMORANDUM FOR ENTRY OF PRELIMINARY INJUNCTION Page 22 of 25 Case No. 2:18-cv-01460-RSM**

**BROWNLIE WOLF & LEE, LLP** 230 E. Champion Street Bellingham, WA 98225 Ph. (360) 676-0306/Fax: (360) 676-8058

5. Using "Comphy" on product search result pages in phrases like "Amazon's Choice for Comphy Sheets" and

6. Using COMPHY or COMFY SHEETS as keywords with Google AdWords and other online advertising networks.

Such relief is necessary to stop the ongoing harm to the COMPHY Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendant from continuing to benefit from its unauthorized use of the COMPHY Trademarks.

## VIII.   A Small Bond or No Bond Should Be Required to Secure the Injunctive Relief.

The Ninth Circuit has instructed district courts that they may dispense with the bond requirement altogether in certain circumstances, for example, when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 910 (9th Cir. 2003)). Similarly, when the plaintiff establishes a strong likelihood of success on the merits, the district court has the discretion to impose a "minimal bond or no bond at all." *Van de Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). Comphy respectfully request that this Court require Comphy to post a bond of no more than One Thousand U.S. Dollars ($1,000.00).  Any harm to Amazon in preventing Amazon from using the Comphy trademarks is minimal.

## IX.   Conclusion

Amazon's use of Comphy's Trademarks to draw shoppers to its website, where they are shown competing sheets, including inferior "Comfy" brand sheets, is causing irreparable damage to Comphy's brand and reputation for high quality and luxury.  Entry of a preliminary

**PLAINTIFF'S SECOND AMENDED MOTION AND MEMORANDUM FOR ENTRY OF PRELIMINARY INJUNCTION Page 23 of 25 Case No. 2:18-cv-01460-RSM**

**BROWNLIE WOLF & LEE, LLP** 230 E. Champion Street Bellingham, WA 98225 Ph. (360) 676-0306/Fax: (360) 676-8058

injunction is necessary to protect Comphy's Trademark rights and to prevent further harm to Comphy and the consuming public.  In view of the foregoing, Comphy respectfully requests that this Court enter a Preliminary Injunction in the form submitted herewith.

DATED this 10th day of October, 2018.

*s/ Mark J. Lee*
Mark J. Lee, WSBA #19339
Haylee J. Hurst, WSBA #51406
of Brownlie Wolf & Lee, LLP
Attorneys for Plaintiff The Comphy Co.

**PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 24 of 25
Case No. 2:18-cv-01460-RSM**

**BROWNLIE WOLF & LEE, LLP**
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058

**DECLARATION OF SERVICE**

SUZANNE M. COLLINS DECLARES AS FOLLOWS:

1.     I am a paralegal with Brownlie Wolf & Lee, LLP, am over the age of 18, and make this declaration based upon personal knowledge and belief.

2.     On October 10, 2018, I filed the foregoing Second Amended Motion and Memorandum for Entry of Preliminary Injunction via the Court's ECF system.  A copy of this document will also be e-mailed to the attorneys named below at the following addresses via the Court's ECF system:

Steven P. Fallon/Allyson M. Martin
Greer, Burns & Crain, Ltd.
sfallon@gbc.law
amartin@gbc.law

Joseph C. Gratz/Vera Ranieri
Durie Tangri LLP
jgratz@durietangri.com
vranieri@durietangri.com

James Harlan Corning/Bonnie E. MacNaughton
Davis Wright Tremaine LLP
jamescorning@dwt.com
bonniemacnaughton@dwt.com

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct to the best of my knowledge and belief.

_October 10_____, 2018

Bellingham, Washington

_Suzanne M Collins_
Suzanne M. Collins

PLAINTIFF'S SECOND AMENDED MOTION
AND MEMORANDUM FOR ENTRY OF
PRELIMINARY INJUNCTION
Page 25 of 25
Case No. 2:18-cv-01460-RSM

BROWNLIE WOLF & LEE, LLP
230 E. Champion Street
Bellingham, WA 98225
Ph. (360) 676-0306/Fax: (360) 676-8058