UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE COMPHY COMPANY, | CASE NO. C18-1460RSM |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY |
| v. | INJUNCTION AND GRANTING IN PART DEFENDANT'S MOTION TO FILE |
| AMAZON.COM, INC., | UNDER SEAL |
| Defendants. | |

## I.    INTRODUCTION

This matter is before the Court on Plaintiff's Second Amended Motion and Memorandum for Entry of Preliminary Injunction (Dkt. #81) and Defendant Amazon.com, Inc.'s Unopposed Motion to File Documents Under Seal (Dkt. #82). Plaintiff's Motion for Preliminary Injunction maintains that Defendant is impermissibly using Plaintiff's trademark in various contexts to further Defendant's own business interests. Plaintiff argues that Defendant's actions are harming its own business and seeks a preliminary injunction to prevent Defendant's numerous uses of its trademark. Defendant maintains that its use is in accordance with trademark law and that no preliminary injunction is warranted. Dkt. #84. Having reviewed the record and for the reasons below, the Court denies Plaintiff's Motion and grants, in part, Defendant's motion to seal.[1]

---

[1] Plaintiff has requested oral argument, but the Court finds oral argument unnecessary to its resolution of the Motion.

ORDER – 1

## II.    BACKGROUND

Plaintiff, The Comphy Company, markets itself as a luxury company, historically supplying its linens to luxury spas. Dkt. #34 at ¶ 2. Plaintiff's business has grown from a single employee to a successful industry leader in spa linens. *Id.* at ¶¶ 3–11. Over time, Plaintiff expanded into bedding and began selling to luxury hotels and spas and allowing those customers to sell bedding directly to the public. *Id.* at ¶¶ 14–15. To further capitalize on its new product and reputation, Plaintiff began marketing its bedding to high-end bed and breakfasts. *Id.* at ¶ 15. Around this same time, Plaintiff began shipping directly to the public so that the hotels, spas, and bed and breakfasts selling its products did not have to carry inventory. *Id.* at ¶ 17. Ultimately, Plaintiff decided to start retailing its products online through its own website. *Id.* at ¶ 18.

Plaintiff does not market directly to customers and instead relies upon word of mouth and first-hand exposure at hotels, spas, and bed and breakfasts utilizing its products. *Id.* at ¶¶ 19–34. Defendant has solicited Plaintiff several times to sell its products on Defendant's platforms. *Id.* at ¶ 25. To maintain the luxury branding of its products, Plaintiff has actively decided not to sell or market its products on Defendant's platforms. *Id.* at ¶¶ 25–26.

In furtherance of its own business, Defendant purchases keyword advertising from various search engines so that members of the public searching for certain terms are offered to search on Defendant's website. Defendant has purchased keyword advertising utilizing keywords including COMPHY from several search engines. Dkt. #1-12 (Google search for "comphy sheets" displaying Defendant's ad for "Comfy Sheets Queen"); Dkt. #1-13 (Bing search results for "comphy sheets" displaying Defendant's ad for "Shop Comfy Sheets"); Dkt. #97-2 (Yahoo! search results for "comphy" displaying Defendant's ad for "Comphy Co Sheets"); Dkt. #104-3 (Bing search for "comphy co sheets" displaying Defendant's ad for "Comphy Company

Sheets at Amazon").  Some ads appear to take consumers to searches for related products on Defendants' website and some appear to take consumers to specific products.

Within Defendant's website, individuals may also make searches.  If "comph" is entered, Defendant's search bar provides possible searches including for "comphy sheets," "comphy company sheets," and "comphysheets" along with seven other unrelated possible searches.  Dkt. #1-7.  Because Plaintiff's products are not available through Defendant, a search for "comphy sheets" provides products similar to Plaintiff's products, including bedding offered for sale by "Comfy."  Dkt. #1-8.  On one product advertised in response to a search for "comphy sheets," Defendant includes a prominent tag providing: "Amazon's Choice for 'comphy sheets.'"[2]  Dkt. #1-11.

Plaintiff believes that Defendant's actions are causing it to fall short of its yearly growth target and that Defendant's actions are harming its brand.  *Id.* at ¶¶ 29–30, 32.  Plaintiff projected a significant increase in its online sales in 2018 but has not met that growth rate through May 31, 2018.  *Id.* at ¶ 29.  Plaintiff maintains that, if not granted the requested relief, it will suffer irreparable harm from Defendant's continued actions.  Plaintiff requests that the Court enter a preliminary injunction prohibiting Defendant from:

> 1.  Promoting, supporting or allowing third parties' unauthorized use of the COMPHY trademark (or highly similar marks such as COMFY) to promote bedding, sheets, pillows and related products not made by or under the authority of The Comphy Co. (the "Infringing Products");
> 2.  Distributing, offering for sale, and selling merchandise under the COMPHY COMPANY, COMPHY SHEETS or COMFY SHEETS storefront in connection with the Infringing Products;

---

[2] Defendant indicates that it has ceased this practice.  Dkt. #84 at 6.  Plaintiff argues that a preliminary injunction is warranted to assure that Defendant does not resume this activity during the pendency of this case.  Dkt. #95 at 1 n.2.  The Court believes that Defendant will continue to act in the manner represented to the Court.  Regardless, Defendant does not stipulate to a preliminary injunction in this regard and Plaintiff must still meet the standards applicable to the issuance of a preliminary injunction.

ORDER – 3

3. Using the prepopulated search term "Comphy Company Sheets", the search term "Comphy" (either alone or with other words), the search term "Comfy" applied to the Infringing Products (either alone or with other words), the search term "Comfy Company Sheets" and the corresponding display of infringing and unlabeled third-party sheets in connection with such searches. Any search including "Comphy" or "Comfy Sheets/Bedding/Pillows" should only display products with clear and unambiguous labelling to show that the products are not genuine Comphy brand products;

4. Automatically suggesting searches for "Comphy", "Comphy Sheets", "Comphy Company" and "Comfy Sheets" when users begin to type a first few letters of those marks;

5. Using "Comphy" on product search result pages in phrases like "Amazon's Choice for Comphy Sheets"; and

6. Using COMPHY or COMFY SHEETS as keywords with Google AdWords and other online advertising networks.

Dkt. #81 at 22–23.

## III.    DISCUSSION

### 1. Legal Standard

Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). To obtain a preliminary injunction, the moving party must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* "[A]n injunction cannot issue merely because it is possible that there will be an irreparable injury to the plaintiff; it must be likely that there will be." *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 21).[3]

---

[3] To the extent the Ninth Circuit still applies a sliding scale test, *see Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011), Plaintiff only passingly mentions its possible relevancy, and only in its Reply. Dkt. #95 at 3. Neither party addresses whether *Alliance* provides for a separate test—a point on which there is some question. *See A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) ("plaintiff may also obtain

ORDER – 4

### 2. Likelihood of Success on the Merits

Plaintiff alleges that it is likely to succeed on the merits of its trademark infringement, false designation of origin, and contributory trademark infringement claims. But the Court cannot conclude that Plaintiff is likely to succeed on the merits of its claims on the record before the Court. The Court's task is made more difficult because Plaintiff challenges Defendant's use of COMPHY in several distinct contexts but does not address those situations separately. Rather, Plaintiff focuses on the sum of Defendant's uses which strengthens certain of Plaintiff's claims and dilutes others. On this record, the Court cannot conclude that Plaintiff is likely to succeed on its various claims.

### A. Trademark Infringement Claims

"Trademark law is concerned with the protection of symbols, elements or devices used to identify a product in the marketplace and to prevent confusion as to its source." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 563 (C.D. Cal. 2005) (quoting *EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos, Inc.*, 228 F.3d 56, 63 (2d Cir. 2000)). To prove its trademark infringement claims, Plaintiff must establish that its mark is a valid and protectable trademark and that Defendant is using a confusingly similar mark. *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting *Grocery Outlet, Inc. v. Albertson's, Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (per curiam)). At bottom, the inquiry is whether Defendant's use of Plaintiff's trademark "creates a likelihood that the consuming public will be confused as to who makes what product." *Jada Toys, Inc. v. Mattel,*

---

a preliminary injunction by showing 'serious questions go[ ] to the merits' of its claims and a balance of hardships that tips 'sharply' towards the plaintiff, <u>so long as it makes a showing on the other two factors</u>") (quoting *Alliance*, 632 F.3d at 1135) (emphasis added). In the absence of argument from either party, the Court does not address the question.

*Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (quoting *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir.2003)).

### i. Not Clear Plaintiff Has a Valid Protectable Trademark in "COMPHY"

A trademark "includes any word, name, symbol, or device, or any combination thereof—[] used by a person . . . to identify and distinguish his or her goods. . . from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Since 2013, Plaintiff has held a registered trademark "for a stylized THE COMPHY CO. and design," as shown in Figure 1. Dkt. #1-5 (providing a copy of U.S. Trademark Registration No. 3,479,190). During the pendency of this Motion, Plaintiff's registration was amended to include a stylized "C" above the word "COMPHY," as shown in Figure 2. Dkt. #103-1 at 2 (copy of updated U.S. Trademark Registration No. 3,479,190).





Figure 1          Figure 2

However, registration provides only a "presumption of validity" and shifts the burden to the defendant to prove otherwise. *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018). Defendant challenges the validity of Plaintiff's trademark by (1) questioning whether the registered mark has application in this case because the case deals with products outside of those specified in the registration, and (2) questioning whether the stylized nature of the registered mark provides the same protection to bare uses of COMPHY.

### a. Registered Trademark Does Not Expand Beyond Specified Goods

Plaintiff's registered mark is for: "Linens and bedding *for health spas*, namely, towels, pads in the nature of bed pads, mattress pads and table pads, sheets, duvets, comforters, pillow

cases, pillow shams, and table skirts." Dkt. #103-1 at 2 (emphasis added). Defendant points out that Plaintiff seeks to protect the use of COMPHY in relation to consumer bedding—a good outside the scope of Plaintiff's registration. Dkt. #84 at 9–10 (advancing argument and citing Plaintiff's testimony that spa bedding and consumer bedding are distinct). The Court agrees.

Defendant relies on *Levi Strauss & Co. v. Blue Bell, Inc.* where the Ninth Circuit held that the protection afforded by registration with regard to "jackets and 'garments, particularly trousers'" did not extend to the holder's *own* use of the mark with regard to shirts. 778 F.2d 1352, 1354 (9th Cir. 1985). Conversely, Plaintiff relies on *Applied Info. Scis. Corp. v. eBAY, Inc.* where the Ninth Circuit held that the protection afforded by registration extends to *others* using the registered mark with regard to goods or services outside of those listed in the registration. 511 F.3d 966, 971 (9th Cir. 2007). This case is more akin to *Levi Strauss* as Plaintiff seeks to expand its registration mark into consumer bedding. The Ninth Circuit, in *Applied Infor Scis. Corp.*, distinguished *Levi Strauss* on just this basis. *Id.* at 971 ("Strauss was attempting to extend its *own* use of its registered mark to goods not specified in its federal registration."). Plaintiff does not allege that Defendant's use of COMPHY in any way interferes with Plaintiff's use of its registered trademark in relation to the goods specified in the trademark registration.[4]

### b. Protection Does Not Extend to Component Parts of Registered Mark

Defendant also challenges whether Plaintiff's registered mark for a stylized "C" with "Comphy" provides a presumption of validity applying to bare uses of COMPHY. Dkt. #84 at 10 ("Any presumption that results from registration 'pertains to the whole mark . . . rather than to any individual portion of the mark.'") (quoting *Igloo Prods. Corp. v. Brantex, Inc.*, 202 F.3d

---

[4] Plaintiff's claims would seem more akin to *Applied Infor Scis. Corp.* if Plaintiff was asserting that Defendant's use of COMPHY was interfering with its sale of linens and bedding to luxury hotels, health spas, and bed and breakfasts—the goods specified in its federal registration.

814, 817 (5th Cir. 2000)).  Plaintiff does not address this challenge and the Court agrees with Defendant.  Plaintiff's own testimony is that: "From the beginning, all Comphy brand products have been marked with a tag that prominently included the word mark 'Comphy' and *associated logo*." Dkt. #34 at ¶ 14 (emphasis added); *see also*, Dkt. #34-8 (representations of the tags used). Nowhere does Plaintiff allege that Defendant is making use of the registered mark itself or any use of the stylized "C" that distinguishes Plaintiff's registered mark.  Determining the protection afforded the bare use of COMPHY therefore requires analysis apart from the fact Plaintiff holds a registered trademark.

### c.   Plaintiff Does Not Clearly Establish a Valid and Protectable Mark

The protection afforded a mark relies upon its distinctiveness.  *S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014) (citing *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir.2010)).  "The purpose of a trademark is to help consumers identify the source, but a mark cannot serve a source-identifying function if the public has never seen the mark and thus is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999).  A mark's strength is determined by consideration of its conceptual and commercial strength. *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011) (citing *Brookfield Commc'ns, Inc.*, 174 F.3d at 1058).

The conceptual strength addresses a mark's distinctiveness on a sliding scale of: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  The last three categories are entitled to the strongest protection because they are "inherently distinctive" as "their intrinsic nature serves to identify a

particular source of a product." *Id.* Generic marks are never protected. *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007) (citing *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999)). Descriptive marks are not inherently distinctive, but commercial strength and secondary meaning can provide a descriptive mark stronger protection. *Sand Hill Advisors, LLC v. Sand Hill AdvisActually it ors, LLC*, 680 F. Supp. 2d 1107, 1112–13 (N.D. Cal. 2010) (citations omitted).

The crux of the issue then, is whether Plaintiff's use of COMPHY, COMPHY COMPANY, or COMPHY CO. is descriptive or suggestive.[5] Determining whether a mark is descriptive or suggestive is difficult and is not an exact science. *Zobmondo Entm't, LLC*, 602 F.3d at 1114 (quoting *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1197 (9th Cir. 2009); 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:66 (4th ed.2010)) ("[t]he descriptive-suggestive borderline is hardly a clear one"), § 11:71 (observing that the descriptive-suggestive dichotomy is not "some kind of concrete and objective classification system")). But again, Plaintiff provides the Court no differentiation between the various forms.

In the Ninth Circuit, the imagination test is the primary test for determining distinctness. *Zobmondo Entm't, LLC*, 602 F.3d at 1115–16. That test "does not ask what information about the product *could* be derived from a mark, but rather whether 'a mental leap is *required*' to understand the mark's relationship to the product." *Id.* at 1116 (quoting *Rudolph Int'l*, 482 F.3d at 1198) (emphasis in original). The determination is not made in the abstract but is made with

---

[5] Plaintiff asserts rights to the use of its registered trademark, "the COMPHY word mark, the COMPHY COMPANY name, and for the COMPHY SHEETS mark" and variations thereof. Dkt. #81 at 6. The Court does not consider COMPHY SHEETS as Plaintiff presents no evidence that it has ever used those words in conjunction.

"reference to the goods or services that it identifies." *Id.* at 1114 (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 (9th Cir. 2002)).

In this context, Plaintiff's COMPHY[6] mark appears more descriptive than suggestive. As it relates to sheets and bedding, COMPHY is descriptive. It describes a quality of the product—that the bedding is comfortable. Dkt. #34 at ¶ 5 (Plaintiff's own testimony that "I chose the name "The Comphy Company" because it captured my goal of creating the most innovative, luxurious, and comfortable linens possible."); Dkt. #85 at 34, 76–77. COMPHY could be suggestive where the product makes the term no longer descriptive, such as "COMPHY" sandpaper. But Plaintiff may not "remove a common descriptive word from the public domain by investing his goods with an additional quality, thus gaining the exclusive right to call his wine 'rose,' his whisky 'blended,' or his bread 'white.'" *Rudolph Int'l*, 482 F.3d at 1198 (quoting *Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75, 81 (7th Cir. 1977)). Similarly, Plaintiff does not have the exclusive right to call its goods "comfy."

Commercial strength can add strength to distinctive and suggestive marks as strength is "based on 'actual marketplace recognition,' and thus 'advertising expenditures can transform a suggestive mark into a strong mark." *Network Automation, Inc.*, 638 F.3d at 1149 (citing *Brookfield Commc'ns, Inc.*, 174 F.3d at 1058).

Plaintiffs arguments as to the commercial strength of its mark are not overly persuasive. Plaintiff argues it is the "brand standard" for luxury hotels, spas, and bed and breakfasts and that it has "expended extensive sums annually since 2003 on advertising to promote its Comphy brand and branded products, via trade shows and other advertising and marketing in industry

---

[6] Consideration of COMPHY COMPANY or COMPHY CO. may alter the Court's analysis but as Plaintiff addresses them interchangeably, the Court considers the broadest term.

publications targeting bed and breakfasts." Dkt. #81 at 6. But again, Plaintiff glosses over its use of the stylized "C" mark in its advertising which lends distinctiveness to the mark and which Plaintiff does not attempt to account for. Further, Plaintiff provides no authority indicating that its market standing and advertising expenditures in the hospitality sector likewise establishes the strength of its mark in the consumer retail market. As regards the consumer retail market, Plaintiff maintains social media accounts but otherwise does not market to consumers and relies on personal exposure and word of mouth. Dkt. #34 at ¶¶ 19–34. Nothing indicates that Plaintiff's strength in the luxury hospitality sector translates to mark strength in the consumer retail setting, outside of a limited number of consumers who experience Plaintiff's products in the luxury hospitality sector and later look for Plaintiff's products in the commercial market. On this record, the Court does not find that COMPHY is an overly strong mark.

### ii. Not Clear Defendant is Using a Confusingly Similar Mark

Upon establishing a protectable mark, a plaintiff must also establish that Defendant's use is confusingly similar. In determining the likelihood of confusion, the Court considers the *Sleekcraft* factors. *Brookfield Commc'ns, Inc.*, 174 F.3d at 1053–54. These include: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979) (citations omitted). In the context of internet search engines, "the labeling and appearance of the advertisements and the surrounding context on the screen displaying the results page" are particularly important. *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir. 2015) (quoting *Network Automation, Inc.*, 638 F.3d at 1154). Further, the *Sleekcraft* factors are

applied in a flexible manner to tailor the consideration to the market context in which confusion may exist. *Network Automation, Inc.*, 638 F.3d at 1145; *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 (9th Cir. 1997). Ultimately, "confusion must 'be probable, not simply a possibility.'" *Multi Time Mach., Inc*, 804 F.3d at 935 (quoting *Murray v. Cable NBC*, 86 F.3d 858, 861 (9th Cir. 1996)).[7]

### a. Strength of the Mark

The confusion analysis brings the Court back to considering the strength of COMPHY. There are few points to add to the Court's earlier consideration. In this context, the strength of the mark is essentially an analog for brand knowledge. For the consuming public to be confused by Defendant's uses of COMPHY, the consuming public must know that COMPHY specifies Plaintiff's goods. As discussed above, the Court does not view Plaintiff's use of COMPHY as an overly strong mark and Plaintiff offers nothing more than unsubstantiated conclusions to the contrary. Dkt. #81 at 9–10. But in this case, the strength of mark factor has increased importance. Plaintiff's arguments are in large dependent on the assumption that the average retail customer is searching for Plaintiff's goods anytime they search COMPHY. Defendants attack this point on two bases.

First, Defendant points out that COMPHY is a common misspelling of "comfy" and that within reviews on its site, COMPHY is used in reference to bedding only nine-percent of the time and used in reference to Plaintiff's goods only slightly more than one-percent of the time.

---

[7] Plaintiff mentions initial interest confusion as a more targeted approach to confusion in contexts such as these. Dkt. #81 at 8–9. Plaintiff notes that within the Ninth Circuit, initial interest confusion is eliminated by clear labeling. *Id.* (citing *Multi Time Mach., Inc.*, 804 F.3d at 938. While Plaintiff makes a brief argument for initial interest confusion, Plaintiff abandons a deeper analysis to consider the *Sleekcraft* factors. Plaintiff further abandons any mention of initial interest confusion on Reply. Dkt. #95. The Court therefore does not address the doctrine in depth.

Dkt. #84 at 11. The Court agrees that use of COMPHY as a search term does not necessarily indicate an intent to search for Plaintiff's products. This is true even in the more limited situation where COMPHY is used in reference to bedding. *C.f. Network Automation, Inc.*, 638 F.3d at 1150 ("consumers searching for the term are presumably looking for its specific product, and not a category of goods").

Second, Defendant provides the results of a study suggesting that consumers are not particularly familiar with Plaintiff's brand such that they associate COMPHY with Plaintiff's products. Dkt. #84 at 12–14. Specifically, Defendant had an expert conduct a survey which determined that thirteen-percent of consumers regarded COMPHY as referring to a particular source for bedding, but that more than twelve-percent of those consumers also regarded "comfort"—a non-existent company also presented—as also referring to a particular source for bedding. *Id.* Plaintiff attacks the utility of Defendant's study on several grounds but does not present countervailing evidence. On this record, the Court again agrees with Defendant.

### b. Proximity of the Goods and Similarity of the Marks[8]

These factors likely weigh in favor of Plaintiff's potential success. Plaintiff points primarily to Defendant's use of COMPHY and COMPHY COMPANY to sell bedding. Dkt. #81 at 10.[9] Plaintiff further points out that "such '[a]ural and semantic similarities increase the

---

[8] Plaintiff addresses these two *Sleekcraft* factors in tandem and the Court does so as well.

[9] The Court notes again that its analysis may differ profoundly if the Court were to consider independently (1) Defendant's use of keyword advertising to direct consumers to its website by placing ads for "Comphy Co Sheets" at Amazon or (2) Defendant's use of the search term "comphy sheets" within its own website to offer consumers "comfy" brand sheets or other sheets marketed as comfy or comfortable. *Network Automation, Inc.*, 638 F.3d at 1148 ("It would be wrong to expand the initial interest confusion theory of infringement beyond the realm of the misleading and deceptive to the context of legitimate comparative and contextual advertising."). As noted previously, Plaintiff has elected to lump the contexts and uses together, and the Court declines the invitation to scour the limited record to craft a legally defensible injunction.

likelihood of consumer confusion." Dkt. #81 at 10 (citing *Pom Wonderful Ltd Liab. Co. v. Hubbard*, 775 F.3d 1118, 1129 n.9 (9th Cir. 2014)). The Court agrees, but still finds the strength of the mark to be a highly relevant factor in this regard.

Consider four scenarios:

1) If Defendant uses COMFY to sell "Comfy Sheets" to a customer who intends to buy "Comfy Sheets" and has independently chosen to shop on Defendant's site, there is no confusion.

2) If Defendant uses COMPHY to sell "Comfy Sheets" to a customer who intends to merely buy comfortable sheets and has independently chosen to shop on Defendant's site, there is no confusion.

3) If Defendant uses COMPHY to sell "Comfy Sheets" to a customer who intends to buy "Comphy Sheets" and has independently chosen to shop on Defendant's site, there may or may not be confusion. Such a customer may have intended to buy "Comphy Sheets" and elected instead to buy "Comfy Sheets" because Defendant—the retailer the customer chose—only sold "Comfy Sheets." On the other hand, the customer may have intended to buy "Comphy Sheets," seen "Comfy Sheets" available, and bought "Comfy Sheets" intending to receive "Comphy Sheets."

4) If Defendant uses COMPHY to advertise "Comfy Sheets" to a customer who intends to buy "Comphy Sheets," knows that "Comfy Sheets" are not the same, and departs Defendant's website to find "Comphy Sheets" elsewhere, there is no confusion.

Only where the customer knows that "Comphy Sheets" are Plaintiff's sheets is there a possibility of actual confusion. And, the Court can only determine whether a customer knows of Plaintiff's sheets based upon the strength of the mark.

ORDER – 14

### c.  Actual Confusion

Plaintiff's strongest argument regards instances of actual confusion. Dkt. #81 at 11–13. Plaintiff points to three main indices of actual confusion. First, Plaintiff relies on its direct contact with consumers through phone and email. Dkt. #40. Second, Plaintiff relies on reviews from Defendant's website referencing Plaintiff. Dkt. #41. Third, Plaintiff relies on the Declaration of Michael Shinn, who has extensive experience shopping with Defendant, detailing his experience intending to purchase Plaintiff's sheets, ending up on Defendant's website, buying "Comfy Sheets," realizing the mistake when the sheets arrived, and returning the Comfy Sheets. Dkt. #42.

There is no question that Plaintiff presents evidence of actual confusion that is often compelling, including written reviews by verified purchasers. Defendant has little retort for the fact other than to point out that the evidence is only that a small percentage of purchasers indicate they were confused. Dkt. #84 at 14. Defendant argues that "trademark laws tolerate 'a certain degree of confusion on the part of consumers,' especially where 'an originally descriptive term was selected to be used as a mark.' . . . If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase.'" *Id.* at 14–15 (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) and *Cosmetically Sealed Indus., Inc. v. Chesebrough–Pond's USA Co.,* 125 F.3d 28, 30 (2d Cir. 1997)). The Court agrees that some actual confusion may exist even if a reasonably prudent consumer would not be confused.

### d.  Marketing Channels Used

Plaintiff argues that most customers are routed to its site by search results and that Defendant, through keyword advertising with search engines, diverts customers to its own site.

Dkt. #81 at 13–14. There is no dispute that Plaintiff and Defendant both utilize keyword advertising with search engines to drive business to their sites and thus directly compete in this marketing channel. But Plaintiff's primary marketing channels have been identified as word of mouth and first-hand exposure. To the extent this factor is applicable, it favors Plaintiff.

### e. Type of Goods and the Degree of Care

Plaintiff argues that its customers "are not a certain, specialized, sophisticated group of people" and that they "are very likely to be confused." Dkt. #81 at 14. Yet Plaintiff markets itself as a luxury company, relies on customer exposure at luxury spas, hotels, and bed and breakfasts, and its "products are not discounted, and are not offered with free shipping." Dkt. #34 at ¶¶ 2, 19, 26. The Court is not persuaded that Plaintiff's customers are wholly unsophisticated. *Multi Time Mach., Inc.*, 804 F.3d at 937 (relevant consumer "is a reasonably prudent consumer accustomed to shopping online" where purchase price is several hundred dollars) (quoting *Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171, 1176 (9th Cir.2010)). This factor is largely neutral.

### f. Defendant's Intent in Selecting the Mark

Plaintiff argues that Defendant is intentionally confusing consumers to benefit from Plaintiff's reputation and associated goodwill because Defendant has solicited Plaintiff to sell through Defendant's platforms. Dkt. #81 at 14–15. The Court does not find this evidence adequate to draw conclusions beyond the facts that Defendant knew of Plaintiff and solicited a business relationship. Plaintiff has not provided any evidence that the prior business inquiries are related to Defendant's current actions. This factor is essentially neutral.[10]

---

[10] The Court also does not find the "likelihood of expansion of the product lines" to be an informative consideration in this case.

### iii.    Not Clear that Plaintiff is Likely to Succeed on the Merits

Overall, there are simply too many holes for the Court to conclude, on this limited record, that Plaintiff is likely to succeed on the merits of its trademark infringement claim.

### B.  False Designation of Origin and Contributory Trademark Infringement Claims

The Court does not find it necessary to analyze Plaintiff's false destination of origin and contributory trademark infringement claims in depth.   Plaintiff makes limited arguments and Plaintiffs are not likely to prevail for the same reasons discussed above.

### 3.  Likelihood of Irreparable Harm

Plaintiff bears the burden of demonstrating that "irreparable injury is *likely* in the absence of an injunction." *Herb Reed*, 736 F.3d at 1249 (quoting *Winter*, 555 U.S. at 22) (emphasis in original).  The mere possibility of irreparable harm is "too lenient" of a standard.  *Id.*  Here, the Court does not find that Plaintiff has established a likelihood of irreparable harm.

Plaintiff argues that "'[e]vidence of loss of control over business reputation and damage to goodwill' can establish irreparable harm when grounded in evidence." Dkt. #81 at 17 (citing *Herb Reed*, 736 F.3d at 1250).  While true, Plaintiff fails to equally appreciate that irreparable harm is not established by platitudes that do not establish "whether 'irreparable injury is *likely* in the absence of an injunction' . . . [or] whether legal remedies, such as money damages, are inadequate."  *Herb Reed*, 736 F.3d at 1250 (quoting *Winter,* 555 U.S. at 22) (emphasis in original).  Here, Plaintiff has not made a sufficient showing that irreparable harm is likely to occur in the absence of a preliminary injunction.

Plaintiff presents two main theories of irreparable harm.  First, Plaintiff argues that, through the first half of the year, its online sales are falling short of a growth estimate made before the year.  Dkt. #34 at ¶¶ 29–30.  Plaintiff anticipated that its online sales would grow by

34%, but as of the middle of 2018, Plaintiff was only seeing 24.2% growth in its online sales. *Id.*

at ¶ 29. Second, Plaintiff argues that Defendant's actions mean Plaintiff "loses control over its

trademarks, reputation, and goodwill." Dkt. #81 at 18. Plaintiff argues that customers are left

believing that it sells its products on Defendant's platforms and believing that the inferior

products they receive are Plaintiff's. The Court is not persuaded that either are irreparable harms,

that an injunction would prevent the harms, or that final remedies are inadequate.

As pertains to Plaintiff's growth target, Defendant aptly questions whether failing to meet

an ambitious growth rate can constitute irreparable harm. Dkt. #84 at 21. The Court agrees and

further finds that Plaintiff has not adequately tied its decreased sales to Defendant's actions.

Defendant's actions could possibly be the sole cause for the reduction in Plaintiff's anticipated

sales and an injunction could possibly result in an uptick in sales. But it may not. Indeed,

Plaintiff only conveys its *belief* that it would not fall short of its growth target in the absence of

Defendant's actions. Dkt. #81 at 17–20. Lastly, and as Defendant points out, Plaintiff does not

demonstrate why money damages are inadequate to remedy a mainly financial harm.

As pertains to Plaintiff's trademarks, reputation, and goodwill, the Court finds that

Plaintiff merely asks this Court to presume that irreparable harm is imminent. But misuse of a

trademark no longer results in a presumption of irreparable harm. *Herb Reed*, 736 F.3d at 1250

(evidence of customer confusion does not necessarily imply irreparable harm). Plaintiff presents

evidence of consumer confusion and dissatisfaction. Evidence of consumer confusion alone goes

primarily to Plaintiff's likelihood of success. *Id.* When combined with consumer dissatisfaction

that may be attributed to Plaintiff's brand, the harm is cognizable but still must be presumed on

the record before the Court. Further, Plaintiff does not explain why final remedies cannot

adequately remedy any harm to Plaintiff's trademarks, reputation, and goodwill. Indeed, this

case appears quite distinct from prior cases where interaction with confused consumers cannot be remedied because those consumers are unknown to the parties. Here, there seems to be a much higher chance that, if liable, Defendant could contact almost every purchaser of the allegedly inferior products and seek to repair any damage that may have been done to Plaintiff's brand.

### 4. The Court Need Not Consider the Balance of Equities and Public Interest

Because Plaintiff has not established a likelihood of success on the merits or a likelihood of irreparable harm in the absence of an injunction, the Court does not find it necessary to address the balance of equities or whether a preliminary injunction serves the public interest.

### 5. Defendant's Motion to File Documents Under Seal

Defendant has also filed an Unopposed Motion to File Documents Under Seal. Dkt. #82. Defendant seeks to file its response and certain exhibits under seal to protect Defendant's confidential business material. *Id.* To minimize the material filed under seal, Defendant has filed redacted versions of the documents. Dkts. #87–#89. Defendant's Motion notes that some information filed under seal was done so at the request of Plaintiff and takes no position on the merits of maintaining the material under seal. Dkt. #82 at 4. Plaintiff, in conference with Defendant, would not withdraw its confidential designation but has failed to respond in support of maintaining its confidential material under seal.

"There is a strong presumption of public access to the court's files." Local Civil Rule 5(g). The party seeking to seal a judicial record must overcome the strong presumption of public access by establishing a "compelling reason" justifying sealing. *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). "What constitutes a 'compelling reason' is 'best

left to the sound discretion of the trial court.'"[11] *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)). However, the trial court must articulate a "factual basis for its ruling, without relying on hypothesis or conjecture." *Kamakana*, 447 F.3d at 1179. Even after finding a compelling reason, "[t]he court must then 'conscientiously balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Center for Auto Safety*, 809 F.3d at 1097 (quoting *Kamakana*, 447 F.3d at 1179) (alterations in original).

The Court concludes that Defendant has met its burden. Defendant has complied with the requirements of Local Civil Rule 5(g), has provided a factual basis supporting its confidential designation, and has limited the amount of material filed under seal. Dkts. #82 and #83. Further, the material filed under seal is only tangentially related to Plaintiff's Motion and does not significantly impact the public's interest in and access to judicial records.

The Court concludes that Plaintiff has not met its burden. Local Civil Rule 5(g)(3) specifically provides that Defendant need not justify the sealing of Plaintiff's records, but that "the party who designated the document confidential must satisfy [the relevant standards] in its response to the motion to seal or in a stipulated motion." Plaintiff's failure to respond leaves the Court with no factual basis for maintaining Plaintiff's allegedly confidential material under seal.

## IV.    CONCLUSION

This is not an easy decision. Many of Defendant's actions toe exceedingly narrow legal and equitable lines. But, on the record presented by Plaintiff, there are simply too many pitfalls

---

[11] "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598).

ORDER – 20

for the Court to map an equitable course. Accordingly, and having reviewed Plaintiff's Motion, the briefing and supplemental filings, the declarations and attached exhibits, and the remainder of the record, the Court finds and ORDERS that:

1. Plaintiff's Second Amended Motion and Memorandum for Entry of Preliminary Injunction (Dkt. #81) is DENIED.

2. Defendant's Unopposed Motion to File Documents Under Seal (Dkt. #82) is GRANTED IN PART and DENIED IN PART, as indicated above.

   a. Defendant's Response (Dkt. #87) and the Declaration of Kim Wilber (Dkt. #89) shall REMAIN UNDER SEAL.

   b. The Clerk shall immediately UNSEAL Exhibit A to the Declaration of Joseph Gratz (Dkt. #88).

   c. No later than seven (7) days from the date of this Order, Defendant shall file an amended version of Defendant's Response (Dkt. #87) that DOES NOT REDACT the material previously redacted on page 2, line 4; page 20, line 27; and page 21, lines 1, 12, 13, and 15. All other redactions may remain.

DATED this 12 day of March, 2019.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE